EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAREER COLLEGE ASSOCIATION d/b/a ASSOCIATION OF PRIVATE SECTOR COLLEGES AND UNIVERSITIES, | |
| Plaintiff, | |
| v. | Civil Action No. 1:11-cv-00138 (RMC) |
| ARNE DUNCAN, in his official capacity as Secretary of the Department of Education, | |
| and | |
| THE DEPARTMENT OF EDUCATION, | |
| Defendants. | |

**DECLARATION OF DEREK S. LYONS**

I, Derek S. Lyons, declare:

1.      I am over 18 years of age and am competent to testify regarding the following:

2.      My full name is Derek Stephen Lyons.

3.      I am an associate attorney with the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Plaintiff Career College Association d/b/a Association of Private Sector Colleges and Universities in this action.  I am admitted to the bar of this Court.  I submit this declaration in support of Plaintiff's Motion For Summary Judgment.

4.      Attached as Exhibit A is a true and correct copy, to the best of my knowledge, of a July 8, 1997 letter from Brian Kerrigan, Department of Education, to Charles Galland, Computer-Ed, Inc.

5.      Attached as Exhibit B is a true and correct copy, to the best of my knowledge, of a January 23, 1996 letter from Jeffrey Baker, Department of Education, to Alice Kurz, Arthur Anderson & Company SC.

6.      Attached as Exhibit C is a true and correct copy, to the best of my knowledge, of a April 3, 1996 letter from Brian Kerrigan, Department of Education, to Stanley A. Freeman, Powers, Pyles, Sutter & Verville.

7.      Attached as Exhibit D is a true and correct copy, to the best of my knowledge, of a December 4, 2002 letter from Jeffrey R. Andrade, Department of Education, to Leigh M. Manasevit and Jonathan D. Tarnow, Brustein and Manasevit, Attorneys at Law.

8.      Attached as Exhibit E is a true and correct copy, to the best of my knowledge, of a February 5, 1996 letter from Brian Kerrigan, Department of Education, to Robert R. Rose III, Rose, Rose, and O'Donnell, LLC.

9.      Attached as Exhibit F is a true and correct copy, to the best of my knowledge, of an April 11, 1996 letter from Fred J. Marinucci, Department of Education, to Robert R. Rose III, Rose, Rose, and O'Donnell, LLC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I executed this Declaration on February 25, 2011, in Washington, DC.

_____
Derek S. Lyons

2

# EXHIBIT A



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF POSTSECONDARY EDUCATION

Mr. Charles Galland
Corporate Counsel
Computer-Ed, Inc.
100 Sylvan Road, G-500
Woburn, MA 01801

JUL   8 1997

Dear Mr. Galland:

Thank you for your inquiry to our Customer Support Branch regarding the prohibition on commissioned salespersons contained in section 487(a)(20) of the Higher Education Act of 1965, as amended (HEA) and 34 CFR 668.14(b)(22). As you know, these provisions of the statute and regulations apply to institutions that participate in a program authorized by Title IV of the HEA, and prohibit the compensation of employees by means of bonuses, commissions, or other incentive payments based directly or indirectly on success in recruiting or enrolling students, or in awarding financial aid.

The Department believes the statute considerably narrows the kinds of compensation that may be legally granted to affected employees. In general, the Department has interpreted the statute to prohibit the payment of any bonuses, commissions, or other incentives that relate in any way to recruitment, enrollment, or financial aid, or the payment of bonuses, commissions or other incentives to employees involved in such activities that can be linked to the substance of their work. With this position as background, I will address in turn each of the compensation proposals you submitted.

The Department has determined that compensation based on quarterly, semi-annual, or annual performance evaluations of actual vs. budgeted enrollment numbers for admissions representatives violates this statutory prohibition. The Department in general has determined that the adjustment of compensation on a basis more frequent than annually is in all but name a system of compensation based on bonuses or commissions. In turn, the criterion for that compensation, success in actual vs. budgeted enrollment, is a direct measure of enrollment, one of the activities for which it is prohibited to pay bonuses or commissions.

The Department has determined that salary increases based solely on an evaluation of past performance of successful enrollment violates the statutory prohibition. However, the Department has determined that permanent annual salary increases for personnel engaged in recruitment or enrollment, or in the awarding of financial aid, that are based on factors touching on success in recruiting or enrolling students or awarding financial aid, along with other substantive criteria, would not violate the statutory prohibition. This compensation is lawful because it is a permanent adjustment to annual salary rather than a bonus or commission, and it is based on the overall job performance of an employee, rather than on a head count of enrollments, admissions, or financial aid awards.

Mr. Galland, page 2

The Department has determined that salary decreases that are based on the number of students the employee has enrolled violates the statutory prohibition. This type of adjustment to compensation makes it clear that the employee's overall compensation is based on a headcount of students enrolled, and thus consists of commissions on students enrolled.

The Department has determined that an incentive program based on the number of enrolled students who graduate from or complete a program does not violate the statutory violation. The Department believes that this type of student success-based compensation plan incorporates the statute's intent to eliminate the incentive to recruit and enroll unprepared students.

The Department has determined that an incentive program based on the employment of students does violate the statutory prohibition. The determination above regarding compensation based on graduation or completion is a narrow exception to the general rule regarding compensation by way of bonuses or commissions. However, a plan based on employment differs from the plan based on graduation or completion in that a student's employment, unlike a student's graduation or completion, is not directly related to the student's success in the course of study for which he or she was recruited and enrolled. A student who gains employment may have been equally successful in securing that employment even if he or she had not been successful in the training program, or even if he or she had not been recruited and enrolled in that program.

The Department has determined that a requirement that an admissions representative meet enrollment goals in order to retain employment does not violate the statutory prohibition, since this requirement does not involve the payment of bonuses, commissions, or other incentives.

I hope this answers all your questions. If you have further questions, please do not hesitate to contact me.

Sincerely,

*Brian Kerrigan*

Brian Kerrigan
Deputy Director, Policy, Training and Analysis Service
Student Financial Assistance Programs

# EXHIBIT B



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF POSTSECONDARY EDUCATION

JAN 2 3 1996

Alice Kurz
Arthur Andersen & Company SC
Suite 1000
1 Renaissance Square
2 North Central
Phoenix, AZ 85004

Dear Ms. Kurz:

This letter is to confirm in part your conversation with David Lorenzo of my staff regarding your client's compensation program. You specifically asked if the components of that program were in compliance with the prohibition of commissioned salespersons contained in section 487(a)(20) of the Higher Education Act of 1965 as amended (HEA), and 34 CFR 668.14(b)(22). As you know, these provisions of the statute and regulations prohibit the compensation of employees by means of bonuses, commissions, or other incentive payments based directly or indirectly on success in recruiting or enrolling students, or in awarding financial aid. I will address in turn each section of the compensation program you submitted. My response to the first section of the compensation plan will differ in part from the guidance you were previously given.

After further discussions among staff, the Department has determined that certain provisions of the "Admissions Review Plan" contained in this compensation program violate the prohibition against commissioned salespersons contained in the statute and regulations. This plan compensates groups of employees by means of salary adjustments based on a number of factors, including the number of students who register for class and the number of students who register as a percentage of the number of inquiries received. While this plan compensates employees by means of salary adjustments, and that compensation is tied to a number of substantive criteria other than the recruiting and enrollment of students, and the awarding of financial aid (both of which are necessary elements if such a plan is to avoid violating the prohibition), the Department is concerned by two other elements in the plan. First, the Department is concerned by the short (semiannual) evaluation period contained in this plan. Anything other than straight annual salary adjustments paid on the basis of substantive criteria that include the recruiting and enrollment of students, and the awarding of financial aid, give the appearance that the adjustment is a bonus or commission. Second, the fact that salaries may be adjusted up or down semiannually reinforces the appearance that these adjustments are bonuses or commissions. The Department believes that in order for your client to remove the statutory violation from this plan, the provision for downward adjustments of salary must be removed.

The Department has determined that the "Representative Plan for Success Quarterly Award Program" contained in this compensation program violates the prohibition

Ms. Kurz, page 2.

contained in the statute and regulations. This plan awards bonuses to members of work groups based on group and individual ratings that measure success in recruiting and enrollment. Because the plan awards bonuses based on activities for which the statute prohibits the award of any incentive payment, it is prohibited as a compensation plan.

The Department has also determined that the "Discretionary Annual Quality Award Program" contained in this compensation program violates the prohibition contained in the statute and regulations if persons working in the areas of recruitment, enrollment, or the award of financial aid participate in the program. This plan awards a prize to team members based on their annual achievements in their work areas. Because such a plan would entail an incentive payment based on success in recruiting and enrolling students, or awarding financial assistance, the institution may not allow persons who recruit or enroll students, or award financial aid, to participate in this plan.

I hope this answers your questions. Please feel free to contact my staff if you have further questions.

Sincerely,

Jeffrey Baker, Director
Policy Development Division
Student Financial Assistance Programs

# EXHIBIT C



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF POSTSECONDARY EDUCATION

APR ─ 3 1996

Mr. Stanley A. Freeman
Powers, Pyles, Sutter & Verville
Third Floor
1275 Pennsylvania Avenue, NW
Washington, DC 20004-2404

Dear Mr. Freeman:

Thank you for your letter of February 13 regarding payment plans for institutional personnel covered by the prohibition contained in section 487(a)(20) of the Higher Education Act of 1965, as amended (HEA) and 34 CFR 668.14(b)(22). In your letter you referred to two payment plans for these personnel proposed by your clients, and asked for the Department's interpretation of the legality of those plans.

The Department has determined that the first plan, in which admissions representatives are paid a bonus on graduates, but are paid in advance at the rate of 50% of the admissions for which the representative was responsible (the historical record of the institution's retention rate), violates the statute. Payment rendered in advance of actual graduation, based on the institution's retention record, is contrary to the Department's guidance regarding payments based on retention contained in the Notice of Proposed Rulemaking of February 28, 1994 ( 59 FR 9539). In that notice, the Secretary deemed such retention-based bonus plans to be in violation of the statute. The Secretary reiterated this guidance in response to commenters in the preamble to the April 29, 1994 Interim Final Rule (59 FR 22377). The plan you described, even though it allows for the debiting of amounts of the bonus that exceed the actual number of graduates, is essentially a bonus plan based on retention. In order for an institution to be in compliance with the statute and employ a plan that compensates personnel based on graduates, any payments must be made subsequent to actual graduations.

The second plan compensates admissions representatives on the basis of salary adjustments that are tied to twice-yearly reviews of performance measures that include admissions interviews yielding enrollments and class starts, as well as other substantive criteria. The Department considers this plan to be in compliance with the statute *except for the provision for downward adjustments of salary*. As stated in the letter of September 8, 1995, attached with your submission, the Department considers plans containing salary *increases* based in part on admissions, enrollments, or awarding of financial aid, to be in compliance with the statute. The Department, however, deems those plans based on evaluations that include both upward and downward adjustments of salary, especially when evaluations occur several times a year, to be in essence bonus or commission plans.

Mr. Freeman, page 2.

Therefore, in order to meet the requirements of the statute, the institution must revise this second plan to eliminate the possibility for downward adjustments of salary if the adjustments are still to be based in part on the admissions and enrollment of students. You should also note that the Department believes that these types of plans meet the requirements of the statute only if, as is the case with this plan, the criteria that form the basis for employee evaluation also include substantive items other than measures of student recruitment and enrollment, and the awarding of financial aid.

I hope this answers your questions fully. If you have further questions, please do not hesitate to contact us again.

Sincerely,

Brian Kerrigan
Deputy Director
Policy, Training and Analysis Service
Student Financial Assistance Programs

# EXHIBIT D



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF POSTSECONDARY EDUCATION

DEC 0 4 2002



Mr. Leigh M. Manasevit
Mr. Jonathan D. Tarnow
Brustein and Manasevit
    Attorneys at Law
3105 South Street, NW
Washington, DC  20007

Dear Mr. Manasevit and Mr. Tarnow:

Thank you for your letter to Jeff Baker regarding the regulations that implement the statutory prohibition against making incentive payments to recruiters and other covered personnel.

The Department no longer reviews and gives approvals for individual institutions' bonus programs. Such a practice proved to be problematic and resulted in unclear guidance. The statute and regulations as a general matter prohibit institutions participating in the Federal student financial assistance programs from providing "any commission, bonus, or other incentive payment based directly or indirectly upon success in securing enrollments or financial aid to any person or entity engaged in any student recruiting or admission activities or in making decisions regarding the awarding of title IV, HEA program funds..." We identified the 12 types of payment arrangements listed in §668.14 (b)(22)(ii) after extensive consultation with institutions, negotiators, and notice and comment. The new regulations establish clear parameters and activities which are not in violation of the statutory requirements, and are based on common business practices.

I caution you from encouraging your clients to structure plans that "push the envelope" of the newly-created safe harbors. These activities were identified to clearly identify common activities that were not considered to be in violation, not to provide an opportunity to create loopholes in the current prohibition.

If I may assist you further, please let me know.

Sincerely,

Jeffrey R. Andrade
Deputy Assistant Secretary for
    Policy, Planning, and Innovation

1990 K STREET, N.W., WASHINGTON, D.C. 20006
www.ed.gov

*Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.*

566

# EXHIBIT E



UNITED STATES DEPARTMENT OF EDUCATION
WASHINGTON, D.C. 20202

FEB 5 1996

Mr. Robert R. Rose III
Rose, Rose, and O'Donnell, LLC
2424 Pioneer Ave., Suite 302
P.O. Box 1006
Cheyenne, Wyoming 82003

Dear Mr. Rose:

Thank you for your recent letter concerning the Department's interpretation of section 487 (a) (20) of the Higher Education Act of 1965, as amended. Your specific concern centers around the issue of compensation to admissions representatives that is based on the graduation of the students recruited by the respective representatives.

As you know, section 487 of the HEA addresses Program Participation Agreements that an institution of higher education, or other eligible institution, must enter into in order to participate in the student financial assistance programs authorized by Title IV of the HEA. Basically, an institution, in order to be eligible and remain eligible to offer its students Title IV student assistance, must meet the applicable statutory definition of an eligible institution in the HEA and comply with the requirements listed in section 487. Section 487 (a) (20) requires that the institution "not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments".

The question at hand, as indicated above, is whether payments by an institution to admissions representatives based on the number of their enrollees who graduate constitute non-compliance with section 487 (a) (20), i.e., whether the Department will deny or terminate an institution's participation in the Title IV programs because the institution makes such payments.

The Department's position on this issue is that such payments, based on the number of students who actually graduate, are not prohibited by section 487 (a) (20). While it would be possible to interpret the phrase, "incentive payment based directly or indirectly on success in securing enrollments" to include a payment based on the graduation of students enrolled by an admissions representative, the Department does not subscribe to that interpretation. In fact, it might be possible to include just about any incentive payments made to an admissions representative, that were based on his or her job performance, in the prohibition found in Section 487 (a) (20).

Page 2 - Robert R. Rose III

However, the Department does not believe that such an all
encompassing interpretation was intended by Congress.
Instead, the Department considers this prohibition to be one
designed to discourage institutions from enrolling unqualified
individuals in their programs solely to obtain the title IV money
that can accompany such students.

The purpose of the Title IV programs is to offer qualified
individuals with financial need the opportunity to secure a
postsecondary education and, consequently, to become productive
citizens.  The making of incentive payments based on the
graduation of enrolled students does not frustrate this purpose,
and it, therefore, is not considered to be in conflict with
section 487 (a) (20).  Graduation from, or completion of,
eligible programs is what the taxpayer is paying for with the
student aid programs.  Thus, an institution is not prohibited
from making incentive payments to an admissions representative
based on the students he or she enrolls who actually graduate.


I hope that this information is helpful to you.  If you have any
further questions, please let me know.

Sincerely,

Brian Kerrigan
Deputy Director
Policy, Training, and Analysis Service

# EXHIBIT F

*Brian Kerrigan*



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF THE GENERAL COUNSEL

April 11, 1996

Robert R. Rose III
Rose, Rose and O'Donnell
2424 Pioneer Ave.
Suite 302
P.O. Box 1006
Cheyenne, WY 82003

Re: Section 487(a)(20) of the Higher Education Act

Dear Mr. Rose:

You asked that we address whether the Department of Education considers an institution that implements a commission plan under which its representatives are compensated on the basis of the number of graduating students recruited by the representative to violate section 487(a)(22) of the Higher Education Act of 1965, as amended. As explained by Mr. Brian Kerrigan, Deputy Director of the Policy, Training and Analysis Service of the Office of Postsecondary Education, the Department does not consider this kind of commission plan to violate this provision of the HEA.

Section 487(a) of the HEA specifies the terms that must be included in the Program Participation Agreement by which a school is authorized to participate in the Title IV, HEA student assistance programs, and have its students qualify to receive the grant, loan, and work-study assistance available under these programs. Section 487(a)(20) of the HEA provides, in pertinent part, that

> An institution will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance...

20 U.S.C. § 1094(a)(20). Department regulations promulgated on April 29, 1994 basically repeat the statutory prohibition without elaboration. 34 C.F.R. § 668.14(b)(22), 59 Fed. Reg. 22427. Comments to the final rule address specifically the prohibition as including what is described as "retention-based pay" for admissions personnel, citing examples of abuse found by Department reviewers at schools where such schemes were used. The abuses referred to included various practices, including outright falsification of records, designed to keep enrolled as

*Our mission is to ensure equal access to education and to promote educational excellence throughout the Nation.*

Robert R. Rose III - page 2

long as possible students who should have been dismissed by the
school for academic deficiency or poor attendance.  59 Fed. Reg.
22377.  The comments then articulate an expectation that
conscientious schools who wished to retain incentives for
admissions personnel could devise other bases for those
incentives.

The opinion expressed by Mr. Kerrigan in his February 5,
1996 letter constitutes the Department's interpretation and
application of its own regulation and of the statute it is
charged with administering, to the question whether either law
prohibits graduation-based incentives.  Mr. Kerrigan, a ranking
official in the office of the Department most directly
responsible for drafting and interpreting the regulation,
concluded that graduation-based incentives do not fall under the
prohibition in HEA § 487(a)(20) and 34 C.F.R. § 668.14(b)(22).
As he notes, Congress did not prohibit all incentive payments,
and the statute and regulation must therefore logically be read
to permit some kinds of incentives based on job performance;
graduation-based incentives are an option that he concludes were
not prohibited by the law.  In fact, the Department has formally
encouraged schools over the years to reduce the number of student
dropouts, and thus reduce the incidence of loan defaults, by
adopting such measures as compensation structures for
commissioned enrollment representatives that base earnings on
whether the individuals recruited remain enrolled for substantial
periods.  34 C.F.R. Part 668 Appendix D, § I.5 (1995).

There is no conflict or inconsistency between the position
articulated by Mr. Kerrigan that graduation-based incentives are
permissible and the rejection of retention-based incentive plans
expressed in the comments to the final rule.  The prohibition on
enrollment-based incentives is directed at the abusive practice
of recruiting unqualified students; retention-based incentive
plans, as noted in the preamble commentary, can and were being
used to continue that abusive practice by fostering the retention
of unqualified students who should have been dropped, and,
probably, not enrolled in the first place.  A graduate, on the
other hand, has not merely survived on the rolls of the school
for some specified period, but has demonstrated academic
achievement in the most formal way that can be conferred by that
school.

Mr. Kerrigan's explanation turns on his recognition that
graduation-based incentive plans are qualitatively different from
mere retention-based plans.  When based on academic success
measured by the criterion of graduation, such incentives can
reasonably be expected to have some deterrent effect on the
abusive practice of recruiting unqualified students, since time
and effort spent enrolling these individuals would have little

Robert R. Rose III - page 3

likelihood of producing compensation. As Mr. Kerrigan therefore concluded, graduation-based incentives do not frustate the goal of § 487(a)(20), and the Department therefore does not consider them to be included within that section's prohibition.

I hope this clarifies the Department's position on this issue.

Sincerely,

*Fred J. Marinucci*

Fred J. Marinucci
Deputy Assistant General Counsel
for Postsecondary Education

cc:  Brian Kerrigan