# EXHIBIT 4

### Declaration of William M. Ojile, Jr.

I, William M. Ojile, Jr., hereby state and declare as follows:

1.      I currently serve as the Senior Vice President, Chief Legal & Compliance Officer of Alta College, Inc. ("Alta"), the parent corporation for Westwood College ("Westwood") and Redstone College ("Redstone").  Westwood, founded in 1953, has 18 campuses in 6 states, which annually serve over 15,000 students in associate, baccalaureate, and master's degree programs, in both on-campus and distance-learning environments.  Redstone is located in Broomfield, Colorado, and offers associate degree programs in several fields.

2.      Westwood and Redstone serve the important mission of providing unique educational opportunities to many individuals seeking to move from an unskilled job to a career requiring technical or professional education.  For example, Westwood provides bachelor's degree programs that students can complete in three years in high-growth fields such as business, design, technology, industrial services, justice, and healthcare.

3.      Alta is subject to, and has previously expressed concern with, the new Compensation regulations (34 C.F.R. § 668.14(b) (2010)), *see* Alta Colleges, Inc., *Public Comment*, No. ED-2010-OPE-0004-1049, *available at* www.regulations.gov ("Alta Comment Letter"), the new Misrepresentation Regulations, and the new State Authorization regulations, *see* Alta College, Inc., *Supplemental Public Comment*, No. ED-2010-OPE-0004-1036 ("Alta Supplemental Comment Letter").  Notwithstanding these concerns, Alta has begun efforts to try to comply with the regulations which apply to its schools and employees.

4.      As described in greater detail below, the significant uncertainty about the meaning and potential broad scope of the new regulations have impeded Alta's efforts to comply with the new regulations and to operate its schools and serve its students effectively.

**Compensation Regulations**

5.     When the Compensation regulations were first proposed, Alta explained in written comments to the administrative record that the uncertainty resulting from the proposed regulatory changes would have many harmful effects on Alta's schools and their students.

6.     For example, Alta explained that the Compensation regulations would make it exceedingly difficult, if not impossible, to evaluate admissions and financial aid personnel on the basis of the quantity and quality of the work they are hired to perform, which is to enroll qualified students and to assist them in obtaining appropriate financial aid.  Alta Comment Letter at 2.  The inability to evaluate employees based on these performance-related considerations would be harmful to prospective and current students who are the beneficiaries of such outreach and educational efforts.

7.     Alta further noted that restricting compensation practices at the very top levels of an organization—regardless of how far removed the employees are from engaging in recruiting, admission, and financial aid related activities—was contrary to the statutory text and congressional intent.  Alta Comment Letter at 1, 4.  The senior employees subjected to these new regulations are not "engaged in" recruiting, admission, or financial aid determinations, yet the Department's regulations purportedly extend to top officials—even school presidents—who merely have some "responsibility" for those activities.

8.     Alta's letter also described how the extension of the compensation prohibition to all levels of management, combined with the limitless approach to determining whether compensation is "indirectly" related to enrollment success, could prevent schools from evaluating or compensating senior management with respect to legitimate business or

organizational metrics that are merely an indirect byproduct of student enrollment numbers. Alta Comment Letter at 2, 4, 6.

9.      Finally, Alta explained that the proposed rules eliminated what are, in Alta's opinion, one of the most useful tools for incentivizing the recruitment and admission of qualified students— retention and graduation-based compensation. Alta Comment Letter at 2, 11. These forms of compensation tied to student success discourage employees from admitting and enrolling unqualified students—the exact problem that the underlying statutory provision and the Compensation regulations were meant to combat. *Id.*

10.     These concerns that Alta identified with the Compensation regulations have made understanding and adopting changes in policy in response to the new regulations extremely challenging.

11.     For example, Westwood has implemented a compensation policy that converts its admissions representatives' compensation to fixed salaries, thereby eliminating enrollment targets—or any other merit-related factor—as a determinant of compensation altogether.

12.     Westwood is still considering additional modifications to its compensation policies but is struggling to identify merit-based factors that could form the basis of salary adjustments and not be deemed by the Department or *qui tam* relators as running afoul of the new regulations. Westwood's recently adopted compensation changes in their current form—paying admissions representatives a fixed salary irrespective of their job performance—may comply with the new regulations, but will fundamentally disrupt our schools' operations.

13.     Inevitably, Westwood's workforce and student population are changing and will continue to change significantly due to the inability to perform meaningful performance reviews and

merit-based salary adjustments for employees who operate at the front lines interacting with students and educating them about what our schools have to offer.

14.    Alta has faced similar struggles devising ways to compensate its senior management personnel who may be encompassed under the new regulations for having "responsibility" over recruiting, admissions, or financial aid related activities.

15.    For example, it is not clear if bonuses or other types of supplemental payments are permitted under the new Compensation regulations to reward top-level employees for superior performance.  We have struggled to identify compensation structures that will allow us to evaluate and compensate our top-level employees for their hard work and success, which inevitably will involve financial considerations relevant to any type of entity, such as growth, revenues, and expenses.  The inability to pay our senior managers and executives on these merit-based factors would make it difficult to hire and retain high-caliber management personnel and would significantly harm our operations.

**Misrepresentation Regulations**

16.    To date, Alta has taken several steps that will facilitate compliance with the new Misrepresentation regulations.

17.    Alta has instituted a third-party verification program that will confirm that new students have both received and understood the information provided through the admissions and financial aid processes, prior to beginning the first day of classes.  In addition, Alta has expanded "mystery shopping" of its financial aid and admissions processes as an additional safeguard to help ensure its employees are being clear and accurate with prospective students. Alta has also launched a refocused admissions presentation, which (i) is designed to assist students in determining if Westwood is the right fit for them, (ii) incorporates information beyond the

currently required disclosures on the cost of tuition for the entire program and likely job opportunities post-graduation, and (iii) discusses the significant commitment required from students to complete their degree.

18.     Alta has invested significant resources into these efforts.  Alta has spent hundreds of thousands of dollars performing an internal review of policies and procedures and developing and implementing the third-party verification program and refocused admissions presentation. Much of this work—such as the development of the new admissions presentation—was begun before the Misrepresentation regulations were proposed, and is part of Alta's ongoing internal efforts to help ensure that employees fairly, accurately and fully represent Westwood and Redstone to prospective students.

19.     Notwithstanding these efforts, Alta has no reasonable assurance that these procedures will protect it from the very severe consequence of the loss of their ability to participate in Title IV programs, because under the Misrepresentation regulations even innocent, immaterial mistakes may result in sanctions from the Department or *qui tam* relators.  This may cause Alta in its ongoing efforts to try to comply with the new regulations to modify or forego altogether some informational materials that although neither fraudulent nor deceitful, could subject the school to increased liability risks.

**State Authorization Regulations**

20.     The HEA defines the term "institution of higher education" to mean, in part, an educational institution in any state that is "legally authorized within such State to provide a program of education beyond secondary education." 20 U.S.C. § 1001(a)(2).  Under the HEA, proprietary institutions of higher education must be similarly authorized within a state.  *See id.* § 1002(b)(1)(B) (referencing § 1001(a)(2)).

21.     Under the new State Authorization regulations, state authorization programs must be capable of reviewing and responding to complaints concerning schools and enforce applicable laws against schools.  Alta Supplemental Comment Letter at 1.  In addition, state authorization programs must expressly authorize schools, by name, to provide postsecondary educational programs. *Id.*

22.     Currently, Westwood College Online is legally authorized and approved in Colorado, which enables it to offer online, educational programs to students in other States.  Many students prefer the flexible and innovative approach of online education that enables them to obtain their education while also fulfilling other job and family related responsibilities.  The State Authorization regulations, however, may require that online programs such as Westwood College Online obtain State approval in each State where a program has students.

23.     If under the new regulations, Westwood College Online is forced to meet varying—perhaps even conflicting—authorization and approval requirements rules for each State where a student is located, it will be difficult for the school to continue to provide these same educational opportunities to students.  Developing an educational curriculum that tracks with the different State approval regimes in dozens of states will be costly, prone to error, and difficult to maintain.

24.     Accordingly, these new regulations could result in irreparable injury to (i) current and prospective students by eliminating educational opportunities and (ii) schools by forcing them to discontinue offering programs as a result of an inadequate amount of students able to enroll in the programs without having access to Title IV funds.

* * *

I hereby declare under penalty of perjury that the forgoing is true and correct.

6

Dated: January 28, 2011

William M. Ojile, Jr.